UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MATTHEW M.,[1] | ) |
|               *Plaintiff*, | ) ) |
|               v. | ) )   No. 4:20-cv-00239-JMS-DML |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
|               *Defendant*. | ) ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Matthew M. applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") in July 2017. [Filing No. 14-5 at 2-9.] Both applications were denied initially, [Filing No. 14-4 at 2-9], and upon reconsideration, [Filing No. 14-4 at 12-17]. Administrative Law Judge ("ALJ") Lauren Burstein held a hearing on the applications on January 23, 2020 and issued an opinion on March 25, 2020, concluding that Matthew M. was not entitled to benefits. [Filing No. 14-2 at 18-27; Filing No. 14-2 at 34-61.] The Social Security Administration Appeals Council denied review. [Filing No. 14-2 at 2.] Matthew M. timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2]  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning SSI and DIB, which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Matthew M. was 44 years old as of his application date. [*See* Filing No. 14-5 at 2.] He alleged disability beginning on May 20, 2017, [Filing No. 14-5 at 2], a crush injury to his left leg sustained in 2014, back problems, arthritis, and bad knees, [Filing No. 14-4 at 5].[3] The injuries to his left leg stem from an accident in which he dropped a motorcycle on his leg. [Filing No. 14-7 at 25.] He "sustained a severely comminuted proximal left tibia fracture," which was repaired with metal plates. [Filing No. 14-7 at 3.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Matthew M. was not disabled. [Filing No. 14-2 at 18-27.] Specifically, the ALJ found as follows:

- At Step One, Matthew M. had not engaged in substantial gainful activity[4] since May 20, 2017, the alleged onset date. [Filing No. 14-2 at 20.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- At Step Two, Matthew M. has the following severe impairments: postsurgical changes and deformity secondary to prior tibial plateau fracture; mild osteoarthritis of the left foot; chronic pain syndrome; and neuropathy. [Filing No. 14-2 at 20.]

- At Step Three, Matthew M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14-2 at 21.]

- After Step Three but before Step Four, Matthew M. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only stand or walk up to two hours a day. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, and scaffolds. He can occasionally balance and stoop. He can never kneel, crouch, or crawl. He must avoid unprotected heights, operation of hazardous machinery, commercial driving, and slippery or dangerous terrain. He would need the option to sit or stand at will, but not be off task more than 10% of the day. Generally, he would not have sitting limitations, but could not stand for more than thirty minutes at a time." [Filing No. 14-2 at 21.]

- At Step Four, Matthew M. was unable to perform his past relevant work as a construction manager, production manager, construction maintenance worker, or system installer. [Filing No. 14-2 at 25.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Matthew M.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he can perform, such as assembler, packager, and visual inspector. [Filing No. 14-2 at 26-27.]

### III.
### DISCUSSION

Matthew M. argues that the ALJ erred in assessing the RFC and that the RFC determination was not supported by substantial evidence for two reasons: (1) the ALJ impermissibly "played doctor" by unilaterally interpreting approximately two years' worth of medical records without submitting those records to medical scrutiny; and (2) the ALJ impermissibly substituted her own opinion for that of the agency's own consultative examiner, Dr. McClellan, without providing a good reason for rejecting Dr. McClellan's opinion. [Filing

5

No. 18 at 15-22.] Because these issues are intertwined and because the Commissioner does not address them separately, the Court will consider both issues together.

Matthew M. first argues that the ALJ correctly rejected the September 2017 DIB initial disability determination by Dr. J. Sands and the November 2017 DIB reconsideration disability determination by Dr. M. Ruiz, both of which found that Matthew M.'s only medically determinable impairment was a fracture of the lower extremity, and both of which found that such impairment was not severe. [Filing No. 18 at 16.] However, Matthew M. argues, after rejecting those opinions based on subsequent evidence showing greater limitations, the ALJ erred in unilaterally interpreting the new evidence and determining the extent of the limitations required by that evidence. [Filing No. 18 at 16-17.] According to Matthew M., the ALJ should have submitted the post-November 2017 evidence to medical scrutiny, instead of "playing doctor" by interpreting that evidence on her own. [Filing No. 18 at 16-17.] Specifically, Matthew M. argues that the following evidence "went totally un-scrutinized by any medical expert and its significance was interpreted only by the layperson ALJ": (1) electromyography testing indicative of lower extremity neuropathy; (2) the development of plantar fibromatosis resulting in the need for surgery; (3) x-rays showing degenerative changes of the first metatarsophalangeal joint; (4) right knee deformity with observations of weakness; (5) "observation of intermittent knee give outs"; (6) sacroiliac joint locking; (7) left knee locking; (8) multiple instances of irregular gait, including a doctor opining that Matthew M. needs a cane; (9) a diagnosis of sacroiliac joint dysfunction; (10) left lower extremity weakness and numbness; and (11) chronic pain syndrome. [Filing No. 18 at 17.] Matthew M. points out that no reviewing physician had knowledge of his plantar fibromatosis, and "the ALJ concluded that she was qualified to alone conclude whether that sort of etiology, combined with the other new evidence

above, would prevent [Matthew M.] from performing the standing, walking, lifting and carrying requirements of even 'sedentary' jobs." [Filing No. 18 at 18.] Matthew M. further argues that the ALJ "provided a near-perfect illustration of the perils of a layperson [ALJ] interpreting complex medical evidence on her own" in relying on straight leg raise testing to conclude that Matthew M.'s chronic pain syndrome and neuropathy were not work preclusive. [Filing No. 18 at 18.] According to Matthew M., straight leg raise testing is used to assess nerve root irritation of the lumbar spine, and is "wholly irrelevant" to the standing, walking, and carrying limitations caused by his knee deformity and plantar fibromatosis. [Filing No. 18 at 18.]

In addition, Matthew M. argues that the ALJ did not provide a good reason for rejecting Dr. McClellan's opinion, which was inconsistent with the RFC and suggestive of disability. [Filing No. 18 at 19-20.] He asserts that the ALJ did not address any of the factors outlined in the regulations for assessing the persuasiveness of medical source opinions. [Filing No. 18 at 19.] He further argues that while the ALJ points to two reasons for rejecting Dr. McClellan's opinion—first, that it "seems to make an assessment based on the least that claimant can do which is contrary to the purpose of the Social Security Act," and second, that it is inconsistent with medical evidence showing no joint pain, no decreased range of motion, no joint swelling, normal strength, and normal inspections of the lower extremities—the first reason is unclear and the second is demonstrably false. [Filing No. 18 at 20-22.] Matthew M. argues that remand is necessary so the ALJ can either adopt Dr. McClellan's opinion or provide some minimally logical and accurate rationale for dismissing it. [Filing No. 18 at 22.]

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Matthew M.'s impairments and her ultimate RFC finding. [Filing No. 20 at 9-14.] She argues that the regulations make clear that the RFC determination is the responsibility of the ALJ alone,

7

and the ALJ was not required to rely on any particular medical opinion or choose between medical opinions. [Filing No. 20 at 9-10.] The Commissioner contends that in crafting the RFC, "the ALJ relied on [Matthew M.'s] own statements about what he could do, namely, his hearing testimony that he could stand for about thirty minutes without a cane, walk with a cane about 150 to 200 feet, and lift and carry about thirty to forty pounds." [Filing No. 20 at 10.] According to the Commissioner, the ALJ reasonably concluded that Matthew M.'s testimony provided support for a light exertion work capacity, and Matthew M. has not shown that the ALJ erred in considering his own testimony when formulating the RFC. [Filing No. 20 at 10.] The Commissioner also argues that Matthew M.'s attorney never asked the ALJ to consult with an additional medical expert, and therefore the ALJ was not required to do so. [Filing No. 20 at 11.] The Commissioner maintains that "it was not incumbent on the ALJ to obtain evidence for the claimant in favor of his disability claim," and instead it was Matthew M.'s burden to present evidence of his disability. [Filing No. 20 at 11-12.] According to the Commissioner, Matthew M. has not identified a treating or examining physician who opines that he is limited to a greater degree than the ALJ found, and he has not "shown sufficient objective corroboration that he needs more limits on his functioning than the ALJ found." [Filing No. 20 at 12-14.] Instead, the Commissioner argues, Matthew M. relies on his various diagnoses and his own subjective statements about his limitations. [Filing No. 20 at 12-14.]

In reply, Matthew M. argues that the Commissioner mischaracterizes his testimony, which supports greater limitations than those imposed. [Filing No. 27 at 1-2.] He contends that "the ALJ was not truly matching her [RFC] to [Matthew M.'s] testimony but rather grasping at limitations that got close enough without requiring a finding of disability." [Filing No. 27 at 2.] Matthew M. argues that the Commissioner is incorrect in contending that his attorney was

8

required to ask the ALJ to obtain an additional medical opinion, because he had no reason to ask. [Filing No. 27 at 2-3.] Specifically, he asserts that both his testimony and the opinion of Dr. McClellan supported a finding of disability, he could have reasonably assumed that the ALJ would have accepted one or both of those, and he "could not know that the ALJ would reject all medical opinion evidence and [his] testimony to craft her own new limitations." [Filing No. 27 at 3.] Matthew M. argues that Dr. McClellan's opinion, which he contends was not rejected for any good reason, supports his contention that he is limited to a greater degree than the ALJ found. [Filing No. 27 at 2.] Matthew M. maintains that the Commissioner's "entire argument does nothing to address the substantial precedent related to ALJs 'playing doctor' or failing to properly evaluate their agency's own examining source opinions." [Filing No. 27 at 3-4.]

### A. The ALJ's Consideration of the Medical Opinions

In determining the weight to give a medical source opinion or prior administrative finding, the ALJ must consider a number of factors, including: (1) whether the opinion is supported by objective medical evidence and explanations; (2) whether the opinion is consistent with evidence from other medical and nonmedical sources; (3) the treatment relationship between the claimant and the person giving the opinion; (4) the specialization of the person giving the opinion; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The first two factors—supportability and consistency—are the most important. 20 C.F.R. § 404.1520c(b)(2). "[W]hen the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ 'not ignore these opinions and must explain the weight given to the opinions in their decisions.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting S.S.R. 96–6p and citing 20 C.F.R. § 404.1527(f)).

The ALJ considered the opinions of Dr. Sands, Dr. Ruiz, and Dr. McClellan, rejecting all three. [Filing No. 14-2 at 24-25.] As to Dr. Sands and Dr. Ruiz, the ALJ concluded that their opinions that Matthew M.'s impairments were not severe were unpersuasive because they failed to consider Matthew M.'s subjective complaints or the combined effects of all his impairments, and because "[e]vidence received at the hearing level established greater exertional, postural, environmental, and mental limitations than determined by" Dr. Sands and Dr. Ruiz. [Filing No. 14-2 at 24.] Matthew M. does not dispute this conclusion, and the Court finds that it is supported by substantial evidence given the ample medical records documenting pain and other issues caused by Matthew M.'s leg injury and history of leg and back pain.

Dr. McClellan examined Matthew M. in September 2017, noting that Matthew M.: (1) was able to get on and off the examination table unassisted without difficulty; (2) "walks with an extremely antalgic gait favoring the left side," which is "very slow"; (3) "has very poor balance"; (4) was unable to walk heel-to-toe and unable to walk on his heels, but was able to walk on his toes "very poorly"; and (5) was able to squat but unable to hop. [Filing No. 14-7 at 119.] Dr. McClellan noted that "[a]ll major joints appear anatomically normal without evidence of inflammation, swelling or effusion," but Matthew M. "does have surgical changes in his left knee and shin." [Filing No. 14-7 at 119.] Dr. McClellan observed that Matthew M. "has exquisite tenderness to light touch in the right lateral thigh," was "very tender to touch throughout the left knee, both medial and lateral joint line in addition to the patellae," and had "pain sensitivity in the left shin and tenderness in his left hip." [Filing No. 14-7 at 119.] He had allodynia in the right lateral thigh and lateral cutaneous nerve distribution, as well as "significant pain even with light touch in the left knee and left shin." [Filing No. 14-7 at 119.] Straight leg raise testing was "negative bilaterally but reproduces low back pain." [Filing No. 14-7 at 119.]

Dr. McClellan noted that there was "normal bulk and tone of all major muscle groups," and that Matthew M. had "5/5 strength in the lower extremities in both proximal and distal muscle groups." [Filing No. 14-7 at 119.] Matthew M.'s range of motion was normal in the cervical and lumbar spine, and "roughly 5 degrees short of full extension on the left side at the knee," but otherwise without limitation in the bilateral lower extremities. [Filing No. 14-7 at 119.] Ultimately, Dr. McClellan opined: "This claimant should not be able to walk for 2 hours out of an 8-hour day. The claimant probably could carry less than 10 pounds frequently and could carry more than 10 pounds on occasion." [Filing No. 14-7 at 120.]

The ALJ found Dr. McClellan's opinion "unpersuasive." [Filing No. 14-2 at 25.] Specifically, the ALJ concluded that: (1) Dr. McClellan's assessment of the amount that Matthew M. can lift and carry was contrary to Matthew M.'s testimony at the hearing; (2) Dr. McClellan "seems to make an assessment based on the least the claimant can do which is contrary to the purpose of the Social Security Act"; and (3) Dr. McClellan's opinion "is not consistent with the medical evidence of record that found [Matthew M.] with no joint pain, no decreased range of motion, no joint swelling, with normal strength, and with inspection of his lower extremities that was normal." [Filing No. 14-2 at 25 (citing Filing No. 14-7 at 219-20).]

Turning to the ALJ's first reason for discrediting Dr. McClellan's opinion, the Court concludes that the opinion is not inconsistent with Matthew M.'s hearing testimony. When asked what is "the most" that he could lift and carry, Matthew M. estimated that he could carry 30 or 40 pounds with his right arm, but clarified that it would have to be an item with a handle because he cannot put weight on his left side. [Filing No. 14-2 at 47; Filing No. 14-2 at 54.] He made no statement as to the frequency with which he could lift and carry this maximum amount of

11

weight. Dr. McClellan's opinion that Matthew M. could carry more than 10 pounds on occasion is therefore not inconsistent with his hearing testimony.

As for the second proffered reason for discounting Dr. McClellan's opinion, the Court is not persuaded by the ALJ's statement that Dr. McClellan "seems to" base his opinion on the least that Matthew M. can do. It is true that the RFC determination must describe the most a claimant can do, not the least he can do. *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). But in the absence of any statement to that effect, it is entirely unclear why the ALJ concluded that Dr. McClellan was opining about the least Matthew M. could do, versus the most he could do.

Finally, the ALJ's third reason for finding Dr. McClellan's opinion unpersuasive is equally without merit. As an initial matter, Dr. McClellan's assessment notes that Matthew M.'s muscle bulk, tone, and strength were normal, that his range of motion was normal except that it was five degrees short in his left knee, and that his joints appeared anatomically normal without evidence of swelling. Dr. McClellan's opinion concerning Matthew M.'s ability to walk, lift, and carry was made despite those findings, and accordingly it is unclear how the ALJ can conclude that his opinion is inconsistent with other medical records documenting similar normal findings relating to those specific matters. In other words, Dr. McClellan apparently did not believe those normal findings to be dispositive of Matthew M.'s ability to walk, lift, and carry, so it is unclear why the ALJ believed them to be. In any event, the ALJ's citation to one single medical record showing some normal findings is a prime example of cherry-picking evidence in support of a conclusion and ignoring contrary evidence, both of which are prohibited. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical

12

evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record . . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). For the foregoing reasons, the ALJ's rejection of Dr. McClellan's opinion was not supported by substantial evidence.

### B. Whether the ALJ Impermissibly "Played Doctor"

As the Seventh Circuit "has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (citing cases). Specifically, an ALJ may not "interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). For example, an ALJ may not conclude, without medical input, that a claimant's most recent test results are "consistent" with the ALJ's conclusions about the claimant's impairments. *McHenry*, 911 F.3d at 871 (citation omitted). *See also Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003) (explaining that typical cases of an ALJ impermissibly "playing doctor" involve either "reject[ing] a doctor's medical conclusion without other evidence," or "draw[ing] medical conclusions themselves about a claimant without relying on medical evidence").

Matthew M.'s argument that the ALJ impermissibly "played doctor" has two primary components: (1) his contention that the ALJ, having rejected all of the medical source opinions in the record, was not permitted to determine the RFC without an accepted medical opinion to base it on; and (2) his contention that the ALJ was not qualified to make judgments about the

potentially disabling effects of test results, observations, and conditions not expressly addressed by any medical source.

Turning to the first component, at least one court in this Circuit has held that "an ALJ cannot reject every medical opinion in a given record in reaching an RFC determination." *Freismuth v. Astrue*, 920 F. Supp. 2d 943, 952 (E.D. Wis. 2013) (citing *Suide v. Astrue*, 371 Fed. App'x. 684 (7th Cir. 2010), and *Eakin v. Astrue*, 432 Fed. App'x. 607 (7th Cir. 2011), for the proposition that an ALJ may not substitute his or her lay opinion for all other medical sources in record). The Seventh Circuit, however, does not appear to endorse that categorical rule.

In *Simila v. Astrue*, the Court considered the claimant's argument that the ALJ "played doctor" by rejecting the only medical opinion on a particular issue, and wrote as follows:

> Simila attacks the ALJ's decision to discount Dr. Caillier's conclusions on a number of grounds. Primarily, Simila contends that the ALJ improperly rejected the opinion of the only psychologist in the case, which left the ALJ without an adequate basis to assess the effect of Simila's somatoform disorder. In this sense, Simila argues that the ALJ 'played doctor,' because she had no other psychological expert opinion in which to ground her findings. We find Simila's view of the ALJ's role in evaluating psychological evidence too narrow. Although another psychologist's opinion would have augmented the ALJ's analysis, neither the regulations nor our prior decisions require the ALJ to rely on such specific evidence to rebut a nontreating physician. '[T]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature*....' Instead, an ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well Dr. Caillier supported and explained his opinion, whether his opinion is consistent with the record, whether Dr. Caillier is a specialist in pain disorders, and any other factor of which the ALJ is aware.

*Simila v. Astrue*, 573 F.3d 503, 514-15 (7th Cir. 2009) (emphasis original) (internal citations omitted).

In light of *Simila*, the Court cannot endorse a rule that an ALJ who rejects all the medical opinions of record—as the ALJ did here—is automatically "playing doctor" in later reaching an RFC determination. Further, the Court acknowledges that "the determination of a claimant's

RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).  Nevertheless, there are a number of issues with the ALJ's opinion that lead the Court to the conclusion that the ALJ was indeed "playing doctor" in this case.

First, while the ALJ acknowledged the extensive medical record evidence documenting Matthew M.'s history of leg and back pain, including antalgic gait, tenderness to palpitation, decreased range of motion, decreased strength, locking of the knee, and MRI and x-ray testing showing degenerative changes and joint deformity, she ultimately discredited much of this evidence and concluded that "examinations of [Matthew M.] have been largely normal." [Filing No. 14-2 at 23-24.]  Specifically, she noted that some records indicated normal muscle strength and tone in the lower extremities, full range of motion, "no deformity of his left ankle," negative straight leg raising tests, a lack of joint swelling, and that Matthew M. was able to get on and off the examination table without assistance in 2017 and at that time did not use an assistive device. [Filing No. 14-2 at 23-24.]

Curiously, the ALJ cites many of the same medical records in support of both competing discussions.  For example, the ALJ cites Dr. McClellan's evaluation, among other records, in support of all of the following findings: (1) "[i]n physical examinations, claimant has been found with antalgic gait, tenderness to palpitation, decreased range of motion of his left knee and lower leg, crepitus of his left knee, his left knee partially locked, and with reduced strength"; (2) "[i]n physical examinations, claimant has been found with normal strength and tone of his lower extremities"; (3) "[a]t an examination in 2017, claimant was able to get on and off the examining table unassisted, without difficulty, and he was not in need of the use of an assistive device"; and (4) "[t]esting has also been negative with negative straight leg raising tests." [*See* Filing No. 14-

15

2 at 23-24 (discussing "Exhibit 6F").] Given that these findings exist simultaneously in the same medical records, it is unclear why the ALJ—acting without a medical opinion on the matter—appears to treat them as mutually exclusive. Put differently, the issue of whether the findings of normal strength and muscle tone, getting on and off the examination table without difficulty, normal straight leg testing, and normal range of motion are either consistent with or preclusive of findings of chronic pain, antalgic gait, swelling, or inability to stand or walk for significant periods of time is likely a conflict that a doctor should resolve. And as discussed above, the only doctor to have considered the question appears to have disagreed with the ALJ's apparent conclusion that none of the findings impact Matthew M.'s functional abilities. At minimum, the Court is unable to trace the path of the ALJ's reasoning from the medical records to her conclusion, as it is unclear whether the medical records that she cites do indeed support her conclusion.[5]

Also significant is the ALJ's apparent failure to consider or address Matthew M.'s plantar fibromatosis. Medical records from a December 2019 visit note "2 large masses on the plantar aspect [of the] left foot," resulting in tenderness to lateral and direct pressure, and indicate that the masses are "increasing in size," causing "significant pain and discomfort," and would require surgical removal. [Filing No. 14-7 at 220.] At the hearing, Matthew M. testified that he has "tumors" on the bottom of his left foot, and as a result he cannot put any weight on his left foot "without it feeling like [he is] standing on nails." [Filing No. 14-2 at 54.] Yet this issue is not

---

[5] The above is intended to be only one example of the ALJ's confusing interpretation of the evidence. On the whole, the Court finds the ALJ's recitation of the record to be rather disingenuous. As another example, in support of her conclusion that "examinations of claimant have been largely normal," the ALJ references a 2017 x-ray of Matthew M.'s knee, which "revealed no acute findings." [Filing No. 14-2 at 24 (citing Filing No. 14-7 at 157).] It is true that the x-ray "revealed no acute findings," but what the ALJ leaves out is that the x-ray also revealed a list of "chronic findings," including "[e]xtensive postsurgical changes and deformity secondary to prior tibial plateau fracture." [Filing No. 14-7 at 157.]

meaningfully addressed in the ALJ's opinion, and no medical source offering an opinion addressed it either.

Matthew M.'s plantar fibromatosis is not the only issue that was not addressed by a reviewing physician. For example, when Dr. McClellan evaluated Matthew M. in 2017, Matthew M. was not using an assistive device. [Filing No. 14-7 at 119.] But later doctors' visits and his hearing testimony indicate that he uses a cane now. [Filing No. 14-2 at 47-48 (testimony discussing cane); Filing No. 14-7 at 192 (August 2019 examination record noting that Matthew M. is ambulatory and walks with an assistive device).] But his need for a cane does not appear to have factored into the ALJ's assessment of Matthew M.'s limitations. The Court does not mean to imply that either plantar fibromatosis or the use of a cane is dispositive of the question of disability, but they do indicate potential significant changes in Matthew M.'s condition that may require an updated assessment by a medical source. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."). Instead of seeking an updated assessment, the ALJ either ignored the new issues or unilaterally decided that they were not medically significant. Either way, the ALJ erred, and such error, in combination with the fact that the ALJ had erroneously rejected the only medical opinion in the record, leads to the conclusion that the ALJ impermissibly "played doctor."[6]

---

[6] The Court is not persuaded by the Commissioner's argument that Matthew M.'s attorney should have asked for an updated medical assessment. "[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

17

### C. The ALJ's Treatment of Matthew M.'s Testimony

In defense of the ALJ's decision, the Commissioner emphasizes that the ALJ relied on Matthew M.'s own statements about what he could do. [Filing No. 20 at 10.] That emphasis is slightly troubling, given that the ALJ expressly found that Matthew M.'s "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."[7] [Filing No. 14-2 at 22.] In other words, the ALJ discredited Matthew M.'s testimony. What is more troubling, however, is that the ALJ also seems to have misrepresented much of Matthew M.'s testimony in order to support her decision to discredit it.

For example, the ALJ wrote in her opinion that Matthew M. "testified that he could stand for about thirty minutes without a cane." [Filing No. 14-2 at 22.] However, his testimony was: "I can stand for probably 30 minutes at least, *but not without the cane* and in that 30 minutes, I'm standing permanently on my right leg only. I don't put weight on my left leg because if I do, then I have to have my right leg bent, my knee, and there's my left knee won't support my weight without it." [Filing No. 14-2 at 47 (emphasis added).] The ALJ also concluded that Matthew M.'s activities of daily living suggested a higher level of functioning than he alleged, because he testified that he "takes care of a pet, he is able to play with his minor child, he can drive, he can cook simple meals, and he can do some household chores such as folding laundry" and those activities "indicate a greater level of functioning than [his] subjective complaints of pain would suggest." [Filing No. 14-2 at 24.] Matthew M. testified that he has a dog, but did not specify how he cares for the dog, other than that "[w]hen [he] need[s] help, usually [his] mother or [his]

---

[7] Indeed, the ALJ used a variation of the standard language that the Seventh Circuit has criticized as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010).

18

girlfriend will come and help [him], especially with bathing [the dog]," and that he does not take the dog for walks because the dog "goes out and comes in on his own." [Filing No. 14-2 at 40.] Matthew M. testified that his minor son does not live with him, but that when his son comes over to visit, he and Matthew M. usually have "a nerf gun war" while Matthew M. remains in a seated position in his recliner. [Filing No. 14-2 at 50.] He testified that he drives "on occasion" and that he can cook for himself using the microwave, but his girlfriend or mother may bring him food or cook for him. [Filing No. 14-2 at 51.] Matthew M. testified that he cannot grocery shop, cannot do yardwork, and that he can fold laundry while seated but his girlfriend "pretty much takes care of everything else" when it comes to household chores. [Filing No. 14-2 at 51.]

To summarize, the ALJ both misquoted Matthew M.'s hearing testimony and mischaracterized it in an attempt to discredit his subjective complaints. The Commissioner, in turn, relied on the testimony to bolster the ALJ's finding that Matthew M. can do light work. This is enough for the Court to conclude that the ALJ's determination regarding Matthew M.'s credibility is "patently wrong" and should be reconsidered. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (stating that a decision is patently wrong if it "lacks any explanation or support").

### D. Whether Substantial Evidence Supports the ALJ's Conclusion

"[T]he ALJ must explain her decision in such a way that allows [the reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). In light of all the issues outlined above, the Court concludes that the ALJ failed to meet that standard in this case. The decision is not supported by substantial evidence and cannot stand.

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision denying Matthew M. benefits and **REMANDS** this matter for further proceedings consistent with this opinion, pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c). Final judgment shall issue accordingly.

Date: 12/13/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**